This is an appeal by the plaintiff, Robin L. Tribble, from a summary judgment in favor of the defendants, Provident Life and Accident Insurance Company and its agent, David Brungard (together referred to hereinafter as "Provident Life"). *Page 1097 
In 1977, Tribble suffered an injury to his lower back, requiring surgery on the L5-S1 interspace on the left side of the spine. Tribble's then-existing disability policy with Massachusetts Mutual Life Insurance Company covered expenses arising from the surgery and continued to cover disability resulting from further injury to Tribble's lower lumbar and sacroiliac region.
In January 1980, Tribble was approached by defendant Brungard, agent for Provident Life. Tribble alleged that Brungard compared Tribble's policy with Massachusetts Mutual to the Provident Life policy, that he compared the definitions of "disability" and the premiums, and that he summarized his comparison of the two policies by stating that the Provident Life policy was "better" than the Massachusetts Mutual policy.
In March 1980, Brungard sold Tribble a disability policy written by Provident Life. Tribble alleged that, relying on Brungard's aforementioned representation, Tribble allowed his Massachusetts Mutual policy to lapse and/or be cancelled.
At his deposition, Tribble testified that when Brungard delivered the policy he stated:
 "Here's your policy and by the way they excluded that little problem you had with your back before."
Tribble responded:
 "Well, I don't expect that same disc will rupture so that's no problem to me."
In December 1983, Tribble suffered another injury to his lower back, and it required surgery. The 1983 back injury necessitated surgery on the L5-S1 interspace as well as the L4-5, which is the next disc up. Dr. Randolph George, in his deposition, stated that records indicate that Tribble's 1977 surgery at L5-S1 was on the same side that he operated on in 1984. In addition to that, he operated on L4-5. Both L4-5 and L5-S1 are located in the lower region of the lumbar spine.
Tribble submitted a claim to Provident Life for a disability resulting from his new injury. Provident Life denied his claim because the policy excluded coverage for "any injury to or disease of the lumbar or sacro-iliac region of the spine."
On March 8, 1985, Tribble filed suit against Brungard and Provident Life, alleging misrepresentation, fraud, breach of contract, and negligence and wanton conduct in the sale of the policy. Tribble thereafter amended his complaint to include counts alleging that the defendants had fraudulently misrepresented that the Provident Life policy was "better" than the Massachusetts Mutual policy and that after the policy had been in effect for two years, the defendants undertook to remove the exclusion but negligently failed to do so.
The trial judge granted the defendants' motion for summary judgment, and the plaintiff has appealed.
The issues presented for review are: 1) whether the allegedly fraudulent statement by Brungard that the Provident Life policy provided "better" coverage than Tribble's then-existing policy with Massachusetts Mutual constitutes an actionable misrepresentation; and 2) whether Tribble initiated this action within the applicable statute of limitations period. We analyze these issues pursuant to the often-stated standard appropriate for summary judgment. Rule 56, Ala.R.Civ.P., sets forth the two-tier standard for granting summary judgment. That rule requires the trial court to determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. This rule must be read in conjunction with the scintilla rule, so that summary judgment will not be granted if there is a scintilla of evidence supporting the argument of the non-moving party. Silk v. Merrill Lynch,Pierce, Fenner Smith, Inc., 437 So.2d 112, 114 (Ala. 1983). On appeal from a summary judgment, we must evaluate the evidence presented to the trial court and ascertain for ourselves, in light of the scintilla rule, whether there were any factual questions due to be decided by the jury. KempMotor Sales, Inc. v. Lawrenz, 505 So.2d 377, 378-79
(Ala. 1987).
The first issue presented in this case is whether Brungard's "better coverage" *Page 1098 
statement is an actionable misrepresentation.
Code 1975, § 6-5-101, and the case law interpreting that section govern the determination of this issue. Section6-5-101 provides:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
In order to fall within the purview of that statute, four elements must be present: (1) There must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon the false representation; and (4) the plaintiff must be damaged as a proximate result. Harmon v. Motors Ins. Corp.,493 So.2d 1370, 1373 (Ala. 1986).
Tribble contends that the statement of Brungard that the Provident Life policy was "better" than the Massachusetts Mutual policy constituted a misrepresentation of a material fact made willfully to deceive.
Provident Life responds, however, by arguing that Brungard's statement was merely a professional opinion or sales pitch and therefore was not actionable under Code 1975, § 6-5-101.
The facts in this case are strikingly similar to those inJarrard v. Nationwide Mutual Ins. Co., 495 So.2d 584
(Ala. 1986), where we specifically addressed the issue of whether an insurance agent's statement that his policy would provide an insured with better coverage constituted an actionable misrepresentation, and held that it did. In that case, Wayne Jarrard, the plaintiff, met with two Nationwide Mutual Insurance Company representatives and told them that he wished to improve his insurance coverage. The Nationwide representatives reviewed Jarrard's then-existing policy with Blue Cross and Blue Shield of Alabama and advised him that the policy offered by Nationwide would provide him with equal or greater coverage. Relying on the Nationwide representatives' statement, Jarrard cancelled his Blue Cross policy and purchased the Nationwide policy.
Three years later, Jarrard underwent surgery to correct internal hemorrhaging and incurred hospital expenses in excess of $7,600. Nationwide offered to pay only $2,800 of these expenses and, as a result, Jarrard filed suit against Nationwide, alleging that its agents had fraudulently induced him to purchase the policy. Nationwide moved for summary judgment, arguing that the representatives' statement could not support a claim of fraud and that Jarrard's complaint had not been filed within the applicable statute of limitations period.
In Jarrard we rejected the defendants' argument that their "equal or better" coverage statement was mere puffery or sales talk, pointing out that this defense had been completely eliminated by legislative mandate. Section27-12-6, Ala. Code 1975, provides:
 "No person shall make or issue, or cause to be made or issued, any written or oral statement misrepresenting or making misleading incomplete comparisons as to the terms, conditions or benefits contained in any policy for the purpose of inducing, or attempting or tending to induce, the policyholder to lapse, forfeit, surrender, retain, exchange or convert any insurance policy."
Writing for the court, Justice Shores, in Jarrard, analyzed the evidence presented under the four elements of actionable misrepresentation, as follows:
 "The evidence before us presents a fact issue as to whether a false representation was made, i.e., whether Green and Chisholm actually compared the Nationwide policy against the Blue Cross policy and, after learning otherwise, told the Jarrards that the Nationwide policy provided hospitalization coverage equal to, or greater than, that provided by the Blue Cross policy. The statement concerned a material existing fact that the Jarrards were seeking to improve their existing hospitalization coverage, and the Jarrards stated that they relied on the statement when they cancelled their Blue Cross policy and bought the Nationwide policy. Finally, the Jarrards offer evidence *Page 1099 
that they suffered compensatory damages of $4,812.25 — the additional amount Blue Cross would have paid towards the hospital bill."
495 So.2d at 586.
It is undisputed that Provident Life, through its agent Brungard, undertook to compare Tribble's then-existing Massachusetts Mutual policy with the Provident Life policy and that defendant Brungard advised Tribble that the Provident Life policy was "better." The question of whether Brungard's "better" statement constitutes an actionable misrepresentation presents a question of fact for the jury to decide. Provident Life was not entitled to a summary judgment, because there was sufficient evidence to produce a genuine issue of material fact, suitable for jury determination.
The final issue presented is whether Tribble initiated this action within the applicable statute of limitations period. Tribble's fraud action had to be "commenced within one year." Code 1975, § 6-2-39(a)(5) (repealed).[1] However, the statutory period is tolled "until discovery of the fact constituting the fraud or discovery of facts which would provoke inquiry in the mind of a reasonable and prudent person, which, if followed up, would lead to the discovery of the fraud." See Code 1975, § 6-2-3. Jarrard v.Nationwide Mutual Ins. Co., 495 So.2d 584, 587 (Ala. 1986).
Tribble contends that there exists a genuine issue of fact as to when he discovered, or should have discovered, the alleged fraud. We disagree. The Jarrard case is distinguishable on its facts.
In the Jarrard case, there was also a claim by the defendant insurer that the claim was barred by the statute of limitations. There, this Court stated the following:
 "Nationwide and Green contend that the one-year limitations period bars Jarrard's claim because he discovered the alleged fraud, at the latest, on June 16, 1981, when the hospital clerk informed him that Nationwide would pay only $2,880.00 of the hospital bill, but he did not file this action until June 25, 1982. However, the defendants fail to continue the story. When the hospital clerk called Green's office on June 16, Green's secretary told the clerk that Nationwide would indeed cover most of the bill. And, as late as July 22, 1982, Jarrard was time and again assured by Green himself that Nationwide would provide the coverage. In light of these circumstances, there is evidence from which a jury could conclude that there was continuing misrepresentation as to coverage. Sims v. Lewis, 374 So.2d 298 (Ala. 1979); Ratledge v. H W, Inc., 435 So.2d 7 (Ala. 1983). There is, likewise, evidence from which a jury could conclude that Green and other agents of Nationwide fraudulently withheld the truth about coverage from Jarrard after a duty to disclose the facts as to coverage arose. In either case, a jury issue is presented as to whether the action is barred by the statute of limitations."
495 So.2d at 587.
This case is more like Gonzales v. U-J ChevroletCo., 451 So.2d 244 (Ala. 1984), and Langley v.Mutual Fire, Marine Inland Insurance, 512 So.2d 752
(Ala. 1987). In Gonzales, this Court affirmed a summary judgment on the fraud counts, stating:
 "Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered. Papastefan v. B L Construction Co., 385 So.2d 966 (Ala. 1980); Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973). Further, if the facts regarding the discovery issue are uncontroverted and show that the discovery occurred *Page 1100 
more than one year prior to the bringing of the suit, summary judgment is proper. Moulder v. Chambers, 390 So.2d 1044 (Ala. 1980). The record shows that Mrs. Gonzales read and signed the sales documents the day she purchased the car. These documents, which were before the trial court, clearly show that the car was used and that a previous tag had been issued to the car — further evidence which indicated that the car was used. She had these documents in her possession shortly after the sale. This Court in [Retail Wholesale Dept. Store Employees Union v.] McGriff, [398 So.2d 249 (Ala. 1981)], held that a retired employee's cause of action for fraud first accrued when the employee received correspondence from his union indicating that a pension would be denied. The date the correspondence was received was the date the fraud was or should have been discovered."
In Langley, the plaintiff claimed, among other things, that the insurer's agent had misrepresented to him the provisions of a new policy. In that case, this Court held:
 "The issue under these facts is whether Dr. Langley filed this action for fraudulent misrepresentation within one year after he reasonably should have discovered the fraud. See Code of 1975, § 6-2-3. Fraud is deemed to have been discovered at the time of the discovery of facts which would provoke inquiry by a person of ordinary prudence, and which, if followed up, would have led to the discovery of the fraud.
 "Under the facts of this case, it is clear that, as a matter of law, Dr. Langley should have discovered the alleged misrepresentation within the year after he received a copy of his St. Paul policy and other documents reflecting the effective date of coverage for that policy. Sharpe v. Crook Realty Co., 508 So.2d 262 (Ala. 1987); Gonzales v. U-J Chevrolet Co., 451 So.2d 244 (Ala. 1984); Torres v. State Farm Fire Casualty Co., 438 So.2d 757 (Ala. 1983); Sexton v. Liberty National Life Ins. Co., 405 So.2d 18 (Ala. 1981); Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala. 1979). See also Myers v. Geneva Life Ins. Co., 495 So.2d 532 (Ala. 1986)."
In this case, there is no evidence of active concealment of the exclusion, or facts similar to those present inJarrard. Here, the exclusion was printed on the fourth page of the policy. We include the exclusion as an appendix to this opinion for reference.
We are of the opinion that in view of these particular facts and circumstances, Tribble should have discovered the exclusion more than one year before the filing of his lawsuit. The summary judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] This action was governed by the one-year statute. Effective January 9, 1985, the statute of limitations provided a two-year limit for fraud actions. Code 1975, §6-2-38(l), as amended by Act 85-39, § 1, Alabama Acts1984-85 (Second Special Session). *Page 1101 
 APPENDIX POLICY SCHEDULE (Continued)
In addition to the exceptions in this policy, the following is also applicable:
THIS POLICY DOES NOT COVER LOSS RESULTING FROM ANY INJURY TO OR DISEASE OF THE LUMBAR OR SACRO-ILIAC REGION OF THE SPINE.
Vice President