Terry WHALEY, Plaintiff,

v.

SONY MAGNETIC PRODUCTS, INC. OF AMERICA, Defendant.

Civ. A. No. 94–D–1459–S.

United States District Court, M.D. Alabama, Southern Division.

June 23, 1995.

---

Charles W. Blakeney, Geneva, AL, for plaintiff.

Jack Corbitt, Ozark, AL, David Gordon, Lisa A. Schreter, Atlanta, GA, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Sony Magnetic Products, Inc. of America's ("Sony") motion for summary judgment filed May 23, 1995, to which plaintiff Terry Whaley ("plaintiff") did not respond.[1] Sony contemporaneously filed a brief and tendered evidence in support of its motion. In this action, the plaintiff seeks redress under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and several state laws. After careful consideration of the relevant case law and the record as a whole, the court finds that Sony's motion is due to be granted.

### JURISDICTION AND VENUE

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1441 (removal jurisdiction). In addition, the court exercises jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1332 (diversity-of-citizenship jurisdiction) or, in the alternative, under 28 U.S.C. § 1367 (supplemental jurisdiction).[2] The parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations

---

1. The court's order entered May 25, 1995 required the plaintiff to reply to the motion for summary judgement on or before June 8, 1995.

2. Section 1332 confers upon the district courts jurisdiction of suits where the amount in controversy, exclusive of interest and costs, exceeds $50,000, and the opposing parties are from different states (i.e., the complete diversity requirement). Here, the amount-in-controversy requirement is satisfied, as the plaintiff seeks more than $50,000 in damages.

While the record does not disclose the citizenship of Sony, it is the court's understanding that Sony is not a citizen of the same state as the plaintiff (i.e., Alabama). In the event that the parties are not diverse, the court finds that § 1367 authorizes it to hear the plaintiff's state law claims, as these causes of action arise out of the same facts as the federal age discrimination claim and, thus, "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

## FINDINGS OF FACT

Viewing the evidence in the light most favorable to the plaintiff, the court considers the following facts controlling in this case:

The plaintiff commenced this action on October 7, 1994, alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The plaintiff, a 56–year–old male, asserts that Sony discriminated against him based on his age when it failed to promote him to a supervisory position in February 1990 and instead promoted a younger employee.[3] The plaintiff also seeks redress under state laws for mental anguish, breach of contract and fraud. Each state law claim arises from Sony's failure to promote the plaintiff.

The plaintiff was employed with Sony from April 24, 1979 until January 29, 1993. The plaintiff began his career with Sony as an Operator B in Sony's mixing department and advanced to an Operator A in 1980.[4] Sony promoted the plaintiff in 1981 to a shift supervisor in the mixing department. In July 1983, however, Sony abolished this supervisor position and demoted the plaintiff to Operator A, a position which the plaintiff had previously held. The plaintiff alleges that when he was demoted, a supervisor assured him that the next management/supervisor position opening would be awarded to him. It is undisputed that six years later in November 1989, the plaintiff applied and was interviewed for a shift supervisor position in the mixing department and that Sony ultimately awarded the position to Kenny Galloway, who is younger than the plaintiff.

The plaintiff became aware of the opening through a bulletin posted at Sony in November 1989. As required, the plaintiff submitted a resume and cover letter expressing interest in the position. Nine other individuals also applied for the job.

A management group—comprised of Eugene Adams, Larry Hatcher, Charles McKissack and Richard Brannon—interviewed the ten applicants, including the plaintiff. After every interview, each member of the management group completed an evaluation form, ranking the applicant's qualifications. The applicants were rated on a scale of one-to-ten in the following categories: (1) job knowledge; (2) past performance; (3) potential for advancement; (4) communication skills; (5) leadership ability; (6) human relations skills; (7) safety awareness; (8) education; (9) policy understanding; and (10) overall impression.

The scores for each applicant were totalled to determine which individual received the highest numerical rating. The scores awarded by the members of the interview committee are as follows:

| Applicant/Interviewer | Adams | Hatcher | McKissack | Brannon | X |
|---|---|---|---|---|---|
| 1. Wendy Holmes | 68 | 78 | 85 | 75 | 306 |
| 2. Kenny Galloway | 64 | 66 | 83 | 80 | 293 |
| 3. James Martin | 53 | 62 | 60 | 68 | 243 |
| 4. Forrest Tucker | 52 | 56 | 55 | 73 | 236 |
| 5. G. Killingsworth | 51 | 58 | 57 | 66 | 232 |
| 6. Plaintiff | 48 | 61 | 52 | 66 | 227 |
| 7. Paul Lee | 50 | 59 | 49 | 53 | 211 |
| 8. Charles Booth | 47 | 64 | 45 | 48 | 204 |
| 9. Randy Adams | 43 | 57 | 50 | 53 | 203 |
| 10. Alex McKinnie | 48 | 47 | 39 | 43 | 177 |

---

3. The plaintiff was 56 years old when he filed a charge of discrimination with the Equal Employment Opportunity Commission in June 1993.

4. Sony manufactures magnetic video and audio products. The mixing department is responsible for manufacturing magnetic coatings for Sony's products.

The record reveals that Sony awarded the promotion in February 1990 to the applicant with the highest total score. Hence, Sony offered the position to Wendy Holmes ("Holmes"), who declined acceptance for reasons not pertinent to this litigation. Kenny Galloway ("Galloway"), who had attained the second highest score, then received an offer from Sony and accepted. Both Holmes and Galloway are younger than the plaintiff.

Sony contends that it awarded the promotion strictly based upon the cumulative scores and that age was not a factor in selecting applicants. Hence, Sony asserts that the only reason the plaintiff was not offered the position was because other applicants received higher scores.

Believing that Sony had denied him the promotion because of his age, the plaintiff filed on June 29, 1993, a charge of age discrimination with the Equal Employment Opportunity Commission (hereafter "EEOC"). The EEOC issued a right-to-sue letter to him on July 7, 1994, after which he commenced this action.

## DISCUSSION

Sony seeks summary judgment as to all the plaintiff's claims alleged in the complaint and, in sum, sets forth the following arguments: (1) the plaintiff's age discrimination claim is time-barred for failure to seasonably file a charge of discrimination with the EEOC; (2) even if the plaintiff's age discrimination claim is timely, the plaintiff has not shown a prima facie case of age discrimination; (3) assuming that the plaintiff established a prima facie case of age discrimination, Sony has articulated a legitimate, nondiscriminatory reason for not promoting the plaintiff, which the plaintiff has failed to rebut; (4) the plaintiff's state law causes of action cannot survive summary judgment, because the plaintiff has failed to raise a genuine issue of material fact as to the essential elements of these claims; and (5) the plaintiff's fraud claim is barred by the statute of limitations. The court will address each argument *in seriatim.*

## I. *Age Discrimination in Employment Act (Count I)*

### A. *Administrative Remedies*

Before examining the merits of plaintiff's claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the court will address Sony's contention that the plaintiff failed to timely file an EEOC charge within the requisite 180 days and, thus, is precluded from bringing an action in federal court. The pertinent section of the ADEA, with which the plaintiff must comply, provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—(1) within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1).

While the timely filing of an EEOC charge is a prerequisite to commencing a lawsuit based upon the ADEA, *McBrayer v. City of Marietta,* 967 F.2d 546, 547 (11th Cir.1992), the 180–day time restraint is not jurisdictional. That is, failure to comply with the time limit does not "deprive[ ] a court of subject matter jurisdiction, but [is] a requirement more in the nature of a statute of limitations that is subject to equitable tolling." *McClinton v. Alabama By–Products Corp.,* 743 F.2d 1483, 1485 (11th Cir.1984) (citation omitted) (brackets supplied).

The alleged act of discrimination is the plaintiff's denial of a promotion to shift supervisor in the mixing department. The undisputed facts reveal that the plaintiff knew that he was not selected for the supervisory position almost immediately after Galloway accepted the job, which was sometime in February 1990. The plaintiff, however, waited more than three years before filing a charge of discrimination with the EEOC on June 29, 1993.

Whether equitable tolling of the 180–day time limitation renders a plaintiff's filing with the EEOC timely "is determined on a case-by-case basis." *Id.* After a careful review of the record, the court finds that the facts do not warrant the application of equi-

table tolling. Tolling of the 180–day provision is appropriate where, for example, an employer does not post the statutorily-required notice of ADEA rights and the employee was not aware of his or her legal status under the ADEA. *Id.* at 1486. Equitable tolling also is proper if an employee is induced by an employer's misleading or fraudulent conduct to delay filing a charge until the 180 days has run. *Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir.1981).

■ Here, the plaintiff admits that Sony posted the required ADEA notice during his employment and that he had seen the posters. Pl.'s Dep. at 43. In addition, when the plaintiff was rejected for the supervisor position, he knew it was unlawful for an employer to discriminate against an employee on the basis of age. *Id.* at 42–43. Finally, the plaintiff concedes that no one at Sony ever misled him or induced him not to pursue his age discrimination claim. *Id.* at 71–72. Based upon the foregoing reasons, the court finds that the plaintiff's claim under the ADEA is time barred and cannot be saved by equitable tolling.

### B. *Disparate Treatment: Denial of a Promotion*

In the alternative, the court finds that the plaintiff has failed to overcome summary judgment as to the merits of his ADEA claim. The plaintiff's claim of age discrimination pertains solely to Sony's failure to select him for the mixing department's shift supervisor position, which was advertised in November 1989 and awarded in February 1990. Pl.'s Dep. at 34, 41, 42.

■ In an action alleging disparate treatment under the ADEA, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of age discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993); *see e.g., Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as is the case here, a plaintiff

can establish intentional discrimination under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[5], and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). Prima facie proof of age discrimination in promotion cases requires the plaintiff to show: (1) that he belongs to a protected group; (2) that he applied for and was qualified for the position for which the employer was seeking applicants; (3) that he was denied the promotion; and (4) that another equally or less qualified individual outside the protected class received the promotion. *Batey,* 24 F.3d at 1334 n. 11 (*citing Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)); *see Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990).

■ Under the ADEA, as opposed to Title VII race and sex claims, the plaintiff does not necessarily have to show that the employer filled the position with someone outside the protected age group. As explained in *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545 (11th Cir.1994): "The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination." *Id.* at 1549.

■ It is undisputed that the plaintiff is a member of a protected group (i.e., over the age of 40) and that he applied for and was refused the position of shift supervisor in the mixing department. The plaintiff, however, has not submitted any evidence raising a

---

**5.** While *McDonnell Douglas* involved a discrimination claim under Title VII, its analysis applies to claims under the ADEA as well. *Alphin v.*

*Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991) (*citing Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990)).

genuine issue of material fact that he was at least equally as qualified as those individuals who were offered the position.

Moreover, the plaintiff appears to be under the impression that in federal court, he merely can "rest on [the] pleadings" and survive summary judgment. This is clearly a misunderstanding of Rule 56 of the *Federal Rules of Civil Procedure*, which provides in part that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

In failing to respond to Sony's motion for summary judgment, the court finds that the plaintiff cannot raise a genuine issue of material fact as to each element of his prima facie case. Even assuming, *arguendo,* that the plaintiff can establish a prima facie case of discrimination, this showing merely raises a rebuttable inference of discrimination. In other words, if the plaintiff successfully carries his or her initial burden of establishing a prima facie case, the burden shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for its decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

The court finds that Sony has rebutted the inference of discrimination by asserting that the plaintiff was not the most qualified applicant under its system of selecting applicants for job openings. That is, the court finds that the higher evaluation rating of the two applicants offered the job as compared to the plaintiff's is sufficient to satisfy Sony's "exceedingly light" burden. *Perryman v. John-*

*son Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983).

Once the defendant satisfies its burden of production, "the plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984) (citations omitted). As already stated, Sony's articulated and legitimate reason is that the job was offered to two employees whose evaluation scores were higher than the plaintiff's. As revealed in the deposition testimony, the plaintiff apparently focuses on the fact that he had more seniority than any employee in the mixing department and was the only applicant who had prior experience as a supervisor. Pl.'s Dep. at 29–30.

The plaintiff, however, has not challenged or presented any evidence that the articulated reason for Sony's failure to promote him is actually a cover-up for age discrimination. The plaintiff also has not attacked as discriminatory Sony's pronounced method for selecting applicants for vacancies. In sum, the court finds that there is not even a scintilla of evidence from which a jury could reasonably conclude that Sony intentionally discriminated against the plaintiff on the basis of age. Accordingly, the court finds that Sony's motion for summary judgment as to the plaintiff's ADEA claim is due to be granted.

### II. *State Law Claims* [6]

#### A. *Mental Anguish (Count II)*

The complaint alleges a claim for "mental anguish." Pl.'s Compl. at ¶ 2 (Count II). Specifically, the plaintiff alleges that he "was forced to endure prejudicial treatment by management, manifested by extreme scrutiny and evaluation of his job performance compared to other employees performing the same job." *Id.* The plaintiff further alleges that he suffered "extreme mental anguish" as a result of Sony's "intentional treatment." *Id.* at 3.

---

6. The court notes that *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), mandates that in diversity actions, federal courts must apply the substantive law of the state in which they sit. Hence, the court must apply Alabama law for each of the plaintiff's state law claims.

■ While the court is unaware of any cause of action under Alabama law for mental anguish, the court has liberally construed the allegations in Count I as stating a claim for the tort of outrage (also known as intentional infliction of emotional distress). *See* Fed.R.Civ.P. 8(f) (providing that "[a]ll pleadings shall be so construed as to do substantial justice"); *see also Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888 (11th Cir.1986) (stating that pleadings should be construed favorably to the pleader).

■ Unfortunately for the plaintiff, the Supreme Court of Alabama has restricted the confines of this tort, allowing for recovery "only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993). To raise a jury issue on a claim for outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Id.* at 1043 (*citing American Road Service Co. v. Inmon*, 394 So.2d 361 (Ala.1981)). The Supreme Court of Alabama has stated that "[b]y extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So.2d at 365.

Moreover, after citing more than twenty cases where a tort of outrage claim was not actionable, the court in *Thomas* outlined three limited circumstances where Alabama courts have allowed this claim to go to the jury:

> (1) cases having to do with wrongful conduct in the context of family burials, *see Whitt v. Hulsey*, 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), *Levite Undertakers Co. v. Griggs*, 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and *Cates v. Taylor*, 428 So.2d 637 (Ala.1983)

> (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim, *National Security Fire & Cas. Co. v. Bowen*, 447 So.2d 133 (Ala.1983); and (3) a case involving egregious sexual harassment, *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala.1989).

*Thomas*, 624 So.2d at 1044.

■ Here, the plaintiff has not provided the court with any evidence to substantiate the allegations in the complaint. Even assuming that the plaintiff had submitted evidence in support of the assertions in the complaint, the facts therein are not so poignant as to "go beyond all possible bounds of decency" and rise to a level of outrage. *Inmon*, 394 So.2d at 365.

For example, there is no evidence that the plaintiff suffered severe emotional distress. In *McIsaac v. WZEW–FM Corp.*, 495 So.2d 649 (Ala.1986), an employee brought suit asserting that the president of the company "made personal advances and propositions" to her and then fired her after she rejected his advances. *Id.* at 650–51. The Supreme Court of Alabama held that the plaintiff had failed to present evidence of severe emotional distress and, thus, could not survive summary judgment on her outrage claim. The court explained that the conduct complained of amounted only to "'mere insults, indignities, threats [or] annoyances,'" all of which are not proscribed under the tort of outrage. *Id.* at 651 (citations omitted).

As in *McIsaac*, the plaintiff has not shown that he suffered any mental anguish or emotional distress from the alleged prejudicial treatment inflicted upon him. In fact, the plaintiff testified that he does not know whether he suffered any psychological disorders as a result of his employment with Sony. Pl.'s Dep. at 67. Moreover, while the court does not condone disparaging treatment in the workplace, the plaintiff's allegations simply are lacking the requisite degree of egregiousness to warrant sending the tort

of outrage claim to the jury. Accordingly, the court finds that Sony's motion for summary judgment as to the outrage claim is due to be granted.

### B. *Breach of Contract (Count III)*

The plaintiff also alleges that Sony's failure to promote him in February 1990 to shift supervisor in the mixing department breached a contract between him and Sony. To prevail on a claim for breach of contract, the plaintiff must establish: "(1) proof of a valid and enforceable contract; (2) the terms and conditions of the contract, including the contract price; (3) a breach of the contract; and (4) damages." *Baxter v. Jones,* 529 So.2d 217, 222 (Ala.1988). Moreover, it is well-settled under Alabama law, that

> all employees are employees at will unless they meet one of the exceptions outlined in *Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725 (Ala.1987): (1) a clear, unequivocal offer of lifetime employment or employment of a definite duration; (2) power in the hiring agent to bind the principal to such an employment contract; (3) substantial consideration provided by the employee for contract apart from the services to be rendered.

*Stutts v. Sears, Roebuck & Co.,* 855 F.Supp. 1574, 1582 (N.D.Ala.1994) (citation omitted).

Here, the plaintiff does not dispute that he is an at-will employee in that he could quit at any time and Sony could terminate his employment for any lawful reason. In addition, the plaintiff signed a form in May 1989, acknowledging "that nothing contained [in the employment handbook] is intended to create an employment contract between [Sony] and me for either employment or the provision of any benefits. I understand that I have the right to terminate my employment at any time and the Company has the right as well." Def.'s Mot. Summ. J., Ex. 7.

As to the exceptions listed in *Stutts,* there is no evidence showing a "clear and unequivocal" promise that the plaintiff would be promoted or that the plaintiff provided Sony "substantial consideration" in return for a promise of promotion. Rather, the plaintiff argues that a supervisor's representation to him—that if he stayed in the mixing department, he "should be senior man" for a supervisor position—equates some type of promise. Pl.'s Dep. at 29–30.

The plaintiff, however, has not submitted any evidence showing that this supervisor, who worked in a different department at the time of the representation, had authority to make a hiring decision in the mixing department. In other words, the plaintiff cannot show that this supervisor's statement should be imputed to Sony to create a binding contract between the plaintiff and Sony. Accordingly, the court finds that the plaintiff has failed to establish the requisite elements of a contract and breach thereof, thus, warranting summary judgment as to the tort of outrage claim.

### C. *Fraud (Count IV)*

The plaintiff further asserts that (1) the supervisor's assurances in July 1983 that the plaintiff would receive the first supervisor opening in the mixing department and (2) Sony's subsequent failure to promote him in February 1990 constitute fraud. Sony contends that the fraud claim is barred by the applicable two-year statute of limitations: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." Ala. Code. § 6–2–38(*l*) (1993). This code section applies to claims for fraud. *Howard v. Mutual Sav. Life Ins. Co.,* 608 So.2d 379, 381 (Ala.1992).

Moreover, when the statute of limitations is raised as a defense, as here, the Alabama Code provides that "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala.Code § 6–2–3 (1993). In interpreting this section, courts consistently have held that a claim for fraud accrues at the time the plaintiff discovers the facts constituting fraud: " 'Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary pru-

dence, and, by simple investigation of the facts, the fraud would have been discovered.'" *Tribble v. Provident Life and Acc. Ins. Co.*, 534 So.2d 1096, 1099 (Ala.1988) (*quoting Gonzales v. U–J Chevrolet Co., Inc.*, 451 So.2d 244, 247 (Ala.1984)). Hence, it is the knowledge of facts which would put a reasonable person on notice of the possible existence of fraud which is sufficient to start the running of the statute of limitations. *See Hicks v. Globe Life and Acc. Ins. Co.*, 584 So.2d 458 (Ala.1991).

When a party discovered or should have discovered the fraud has long been a question for the jury. *See Thompson v. National Health Ins. Co.*, 549 So.2d 12 (Ala. 1989); *State Sec. Life Ins. Co. v. Henson*, 288 Ala. 497, 262 So.2d 745 (1972). However, where "the facts regarding the discovery issue are uncontroverted and show that discovery occurred more than one year [7] prior to the bringing of the suit, summary judgment is proper." *Tribble*, 534 So.2d at 1099–1100 (*quoting Gonzales*, 451 So.2d at 247).

Here, the plaintiff filed the complaint on October 7, 1994. Pl.'s Dep. 65–66. Hence, for the fraud count to survive summary judgment, the plaintiff must have learned of facts that would have put a reasonable person on notice of the possible existence of fraud on or after October 7, 1992. As already stated, it is undisputed that the plaintiff knew in February 1990 that Sony had rejected him for the position of mixing shift supervisor position. Hence, more than four years passed from the time he had notice until the filing of the complaint. As such, the plaintiff's fraud claim is barred by statute of limitations.

## CONCLUSION

For the foregoing reasons, the court finds that Sony's motion for summary judgment is due to be granted.

---

7. Effective January 9, 1985, § 6–2–3 was amended to provide a two-year statute of limitations in fraud actions.